## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Sonia Figueroa-Carrasquillo,** | |
| *Plaintiff,* | |
| v. | **Civil No. 13-1718 (DRD)** |
| **Axiscare Health Logistic, Inc., et al,** | |
| *Defendants.* | |
| **Luis J. Torres-Ramirez,** | |
| *Plaintiff,* | |
| v. | **Civil No. 13-1755 (DRD)** |
| **Axiscare Health Logistic, Inc., et al.,** | |
| *Defendants.* | |

### *AMENDED* OMNIBUS OPINION & ORDER

Plaintiff Sonia Figueroa (Figueroa) originally filed this action against defendants Axiscare Health Logistics, Inc. (Axiscare) and Cardinal Health Puerto Rico, Inc. (Cardinal) alleging violations to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12102 *et seq.* (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Equal Pay Act (EPA), 29 U.S.C. § 206, as well as violations to various state laws. In a separate action and through the same counsel, co-Plaintiff Luis Torres ("Torres") also filed suit against Axiscare alleging retaliation under the ADA, Title VII, and related state laws. These complaints were later consolidated.

Pending before the Court are several motions for summary judgment filed by the defendants. See ECF Nos. 63, 68, & 72. For the reasons that follow, these motions are granted.

## I.     Background

Unless otherwise specified, the facts laid out below are uncontested.

1. Facts relevant to **Plaintiff Sonia Figueroa's** claims against Axiscare

Axiscare – previously known as Droguería Central, Inc. – is a company that sells and distributes medical and surgical equipment, among other things. Back in November 2006, Axiscare hired Figueroa as its Logistics Director, a position that entailed the organization and management of the company's warehouse and employees. She was in charge of product receipt and delivery, management of inventory, implementation of productivity measures, general security of the warehouse and the products maintained within, warehouse maintenance, legal compliance, and logistical contracts with third parties.

As Logistics Director, Figueroa reported directly to Axiscare's president and CEO, Guillermo Marrero ("Marrero"). At the time of her termination, she had the third highest salary in the company – after Marrero and the company's pharmacy regent who is also a woman. See Axiscare's Statement of Uncontested Facts, ECF No. 67-1 ¶ 5-6.[1]

According to Marrero, Figueroa played a key role in the enterprise. He considered that, "[g]iven the responsibilities vested on the Logistics Director, as well as the access it has to the Company's resources," the position needed of his "full confidence and trust." ECF No. 67-1, ¶

---

[1] Figueroa's attempt to challenge Axiscare's proffer of facts related to her salary fails completely. For starters, she does not contest that she received "the highest bonus among all employees" for the year 2012. Rather, she merely alleged in her deposition that other employees "had a higher salary" than her. Yet she fails to establish that she had personal knowledge of these facts. See Figueroa's SUF, p. 5. For purposes of summary judgment, such a statement is inadmissible. See Fed. R. Civ. P. 56(e); Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001); Insight Tech., Inc. v. SureFire, LLC, Civ. No. 04-CV-74-JD, 2007 WL 3244092 at *5 (D.N.H. Nov. 1, 2007).

11.[2]  Further, Figueroa's position required "continuous on-site presence since it demand[ed] supervision and management of a large group of employees, all performing multiple tasks that require constant coordination and integration." Id. at ¶ 10.[3] Figueroa, in sum, held a high-level executive position that was indispensable to the company's operation.

During the first week of June 2012, Figueroa suffered a facial paralysis at work that "left her mouth twisted." See ECF No. 83-1, ¶ 48; ECF No. 94-1 ¶ 48. Figueroa had an MRI and visited Dr. Blasini, who allegedly diagnosed her with a "micro-stroke." See ECF No. 83-1, ¶ 48. Figueroa presented a medical certificate recommending rest until June 15, 2012, and accordingly took a leave of absence until that date. See ECF No. 67-1, ¶ 17.

Upon returning to work, Figueroa asked her employer for a series of accommodations, including the ability to work from home, and for an assistant. Axiscare allowed plaintiff to work remotely for a period of two weeks. During this time, the company "used its in-house carriers to deliver documents to Figueroa." See ECF No. 63 at fn. 2. She also had remote access to the

---

[2] Figueroa denies this statement, but fails to support the denial with any competent evidence. This means, of course, that the denial violates this district's anti-ferret rule, Local Rule 56(c), which requires denials to be supported by a citation to the record. Instead, Figueroa argues that Marrero's statement must be stricken because it is supported by a sworn statement "created only to support the allegations in the dispositive motion." Figueroa's SUF, p. 5. Procedurally, her argument is a non-starter since she fails to accompany the challenge with any supporting authority, in contravention to Local Rule 7. And on the merits, her challenge fails since it is black-letter law that affidavits – even self-serving ones – are admissible on summary judgment so long as they "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e); see Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir.1997) (**"A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."**). As the company's top officer, Marrero clearly had personal knowledge of Figueroa's job duties, and more obviously of the requirement that the Logistics Director had to maintain her employer's trust at all times. Marrero's statement therefore lies uncontested on the record.

[3] Figueroa's denial of this statement appears to be limited exclusively to the "continuous on-site presence" phrase. In particular, she mentions that she was once allowed a reasonable accommodation to work from home, and that she had remote access to the warehouse cameras. Thus, to the extent this statement is contested, it is only on the question of whether Figueroa's continuous physical presence was an essential job duty of the Logistics Director. This distinction, however, is ultimately immaterial.

warehouse's cameras. Later, for a period of about a month, the company provided Figueroa with an assistant, and allowed her to work a lower number of hours at full pay. Even though the company allowed for these arrangements, Figueroa never provided any information or documents indicating that she suffered from a disability that would limit in any way her ability to comply with assigned duties as Logistics Director.

About three months later, a theft occurred at the company's warehouse. In preparation for a transfer to a satellite warehouse, a container holding merchandise valued at $150,000 was placed outside the main warehouse. But the transfer never occurred, as the container was left unsecured overnight and its contents mysteriously disappeared. In response, Marrero hired a third party to investigate the theft. When asked, Figueroa blamed another employee (Ruth Padilla) for the incident, alleging she was responsible for the contents of the container. Marrero found, however, that Figueroa's statement failed to be consistent with the information provided by a private investigator, which showed that Figueroa had personally requested the transfer and that she was responsible for leaving the container outside and unsecured.[4] On December 11,

---

[4] Figueroa's denial of Axiscare's fact spans four pages of content. For starters, the document as a whole fails to comply with Local Rule 56(c), which requires an opposing statement of fact to be "short" and "concise." Further, this morass of factual matter does not directly refute Axiscare's statement (for example, by denying that a third party conducted the investigation). Instead, it is "additional" content that serves to supplement Figueroa's account of the facts. To the extent these facts are not included in a separate statement accompanied by a specific record citation, they fail to comply with Local Rule 56(c) and must be disregarded. See Carreras v. Sajo, García & Partners, 596 F.3d 25, 31 (1st Cir. 2010). Moreover, Figueroa also references material not disclosed by plaintiff to Axiscare during discovery. For instance, Figueroa attempts to challenge the impartiality of the report by referencing an email exchange she had with the private investigator hired by Marrero to investigate the theft. Contrary to what Figueroa claims, the content of this exchange is not damning at all. Regardless, Figueroa's reference to this fact uncovers a more serious issue. To the Court's surprise, the email exchange is dated June 18, 2015 – *months* after discovery closed and *after* Axiscare filed its motion for summary judgment. To incorporate this fact to the record would sanction Figueroa's attempt to litigate by ambush. The last provides yet another basis for disregarding ¶ 5 of Plaintiff's opposing statement of fact.

2012, Marrero sent Figueroa an email detailing his conclusions and telling her that she had been

negligent in her duties. Besides the email, Figueroa was not disciplined for this situation.

The day before Marrero sent the aforementioned email, Figueroa met with Marrero in

his office to discuss an unrelated matter. During the meeting, Figueroa raised complaints against

various company executives, the Human Resources assistant, and a warehouse employee. In

particular, she alleged that:

> (1) she had instructed a supervisor to make changes to the meal period of one
> employee but the supervisor, with the acquiescence and assistance of Human
> Resources, failed to make the change;
> (2) the change was not implemented in order to allow the employee to coincide
> with the meal period of the Human Resources assistant, with whom Figueroa
> alleged the employee had a romantic relationship;
> (3) the Human Resources Department adjusted the employee's time registry in
> order to protect him or conceal his tardiness;
> (4) the Human Resources Department undermined her authority;
> (5) Annette Avilés ("Avilés"), Human Resources and Office Manager, allegedly
> made a comment asking her when she would resign; and
> (6) there were rumors in the warehouse that she would resign or be terminated from
> employment.

Marrero believed these allegations were serious, and launched yet another investigation. See

ECF No. 67-1, ¶ 26.[5] After his investigation, Marrero reached the following findings:

> (1) the change to the meal period requested by Figueroa had, in fact, been
> implemented;

---

[5] This statement is uncontroverted. Like before, Figueroa attempts to qualify the same by introducing numerous additional facts in violation of Local Rule 56(c). This will not do. Moreover, Figueroa supports her opposition with reference to a handwritten note from a security guard, Mr. Claudio, showing that the HR manager asked him to make "false statements" in connection with Marrero's investigation. This exhibit shall be stricken from the record. For starters, Figueroa never announced Mr. Claudio as a witness in this case. Also, to the extent the statement is furnished to prove the truth of the matter asserted, it is hearsay. And, finally, the handwritten document has not been authenticated. See Fed R. Evid. 901; Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (noting that "[t]o be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)") (citation and internal quotation marks omitted).

(2) there was no evidence that Human Resources altered or tampered with the employee's time registry;

(3) Figueroa had ordered security personnel to maintain a log of the entry and exit of two employees, even though Figueroa denied she had given said instruction when Marrero asked her;

(4) there was no evidence of an improper relationship between two employees, as alleged by Figueroa;

(5) Figueroa herself expressed on several occasions in front of other employees that she was going to resign.

See Axiscare's SUF, ¶ 27; Id. at ¶ 28.[6] According to Marrero, the results of this investigation eroded the trust he had placed in Figueroa, which was essential to the position of Logistics Director at the company.

On February 11, 2013, Marrero sent Figueroa an email with an attached memorandum containing the results of the investigation. Marrero also requested a meeting with Figueroa to discuss his findings. Before the meeting took place, however, Figueroa presented a medical certificate in support of a leave of absence scheduled to commence on February 13, and lasting until February 27. See Axiscare SUF, ¶ 33. Later that month, Axiscare received documents from Non-Occupational Disability Insurance (SINOT, according to its Spanish acronym), stating that she would be unable to work until August 15, 2013. The SINOT documents sent to Axiscare contained a diagnosis of severe major depression. See ECF No. 108-10, p. 1. Marrero was never able to discuss his findings with Figueroa.

---

[6] Again, Figueroa's attempt to controvert ¶¶ 27 and 28 of Axiscare's statement conflicts with Local Rule 56(c). Indeed, she includes so many facts that it is hard to tell what is relevant and what is not. Importantly, *none* of the facts she supplies refute that Marrero reached the conclusions detailed above. For example, Figueroa claims that Marrero gave her a performance bonus of $10,000 in February 2012 (which he later increased to $11,000). She also cites extensively to co-plaintiff Torres' deposition testimony regarding facts that occurred <u>after</u> the investigation had taken place and Marrero had reached these conclusions.

Because Figueroa would be unable to work for a significant amount of time, Axiscare needed to take steps to ensure the warehouse ran smoothly during her absence. Accordingly, Marrero and Avilés exchanged emails with Figueroa, asking her to provide information regarding any pending matters. For the same reason, the company also examined Figueroa's work area, including her files and computer. See Axiscare SUF at ¶ 37. Upon doing so, the company discovered that someone had emptied Figueroa's desk and filing cabinets, and that files in her computer had been erased. On March 1, 2013, Marrero tasked Juan Rivera, the company's IT and network administrator since 2011, with investigating how those files could have been erased. See ECF No. 79-2.

Figueroa explained in her deposition that she did not remove any physical files. Rather, she said her assistant removed the files. The tale is different with respect to the computer files. See ECF No. 79-2. On this point, the IT administrator found that

> on February 22, 2013, the digital file in which Figueroa saved documents had 1,240 files and 179 folders, which occupied 281.9 megabytes of space. On February 25, 2013, the same folder contained only 74 files and 64 folders, for a total of 81.4 megabytes. In other words, Figueroa's work computer had, on February 25, 2013, 1165 files and 115 folders less than on February 23, 2013.

Id. at ¶ 9. Rivera also found that "no person other than Figueroa entered her office or accessed her computer between February 22 and February 25, 2013." See id. at ¶ 8. While Figueroa flatly denies that she deleted any files, she provides no competent evidence refuting Rivera's conclusion that Figueroa had intentionally deleted these files.

It is uncontested that under the company's disciplinary rules, removing company property without authorization and intentionally altering company records are acts that justify immediate termination. For Marrero, that was the last straw. Upon learning of Rivera's findings,

and combined with the results of the previous investigations, Marrero felt he could no longer trust Figueroa and decided to terminate her employment.

Several days after Rivera began his investigation, on March 8, 2013, Figueroa filed a discrimination charge with the EEOC. This charge was notified to Axiscare on March 17. A couple of weeks later, on April 10, 2013, Figueroa reported to Axiscare with a medical certificate from the psychiatrist stating that she was capable of returning to work. Nevertheless, Figueroa was turned away at the door. Seven days later, Avilés met with Figueroa and told her that she had been discharged.

2.  Facts relevant to **Plaintiff Luis Torres**

Torres began working in early 2010 as a quality auditor in the "*Droguería*" division of Axiscare, producing pharmaceutical and personal care products. ECF No. 67-1, ¶ 5. At some point, Torres was transferred to the "Central Health Care" (CHC) division, and was promoted to "supervisor." Id. at ¶ 3.

Immediately after, Figueroa filed her EEOC charge in March 2013, Torres claims that Marrero asked him to "prepare a sworn statement" declaring that "the statements made by Figueroa in her discrimination charge were false and that Figueroa's treatment of the employees under her supervision was not cordial." See ECF No. 85-1, ¶ 6.[7] Torres replied that he would not comply because he believed that Figueroa's allegations were true. Id.

Around the same time, Axiscare decided to divest itself from the *Droguería* division, and sold the division to co-defendant Cardinal. As part of the sale, Axiscare sent Cardinal a list

---

[7] The statement of facts in opposition submitted by Torres contains "additional facts," spanning multiple paragraphs, that do not directly refute Axiscare's allegations. Further, Torres does not provide a separate statement of fact containing these allegations, as required by Local Rule 56(c). These facts shall be disregarded. Standing alone, this finding serves as an independent ground to dismiss Torres' entire complaint, given that the opposition depends entirely on these disregarded facts.

of employees who worked in the area affected by the sale of assets. Cardinal had the option of interviewing interested employees, and in its discretion, making employment offers to those employees.

On April 2, 2013, Torres was transferred from CHC back to the *Droguería* division. The following day, Torres took a sick leave of absence, which lasted until April 17, 2013. During this time, Torres applied for a job with Cardinal. Cardinal made him a written offer, dated April 17, 2013. Torres signed the offer, under a line that read "I accept this employment offer". <u>See</u> ECF No. 67-1, p. 11. On May 2 and 3, 2013, Axiscare processed all terminations of the seventeen (17) employees, including Torres, who previously had two weeks before accepted employment with Cardinal. With that background, Torres filed the instant action claiming that he had been terminated for refusing to comply with Marrero's request.

## II.     Standard of Law

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered after a moving party passes a two-prong test. A summary judgment is justified where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A fact is "material" when it has the potential to change the outcome of the suit under governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). On the other hand, a fact is "genuine" when there is sufficient evidence wherein a "reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. <u>Id.</u>, at 252.

After the moving party meets this burden, the responsibility shifts to the non-moving party to show that there still exists "a trialworthy issue as to some material facts." Cortés–Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 187 (1st Cir. 1997) (citing Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995)). At the summary judgment stage, the trial court reviews "the record 'in the light most flattering to the non-movant and indulg[es] in all reasonable references in that party's favor.' Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997) (internal citations omitted). However, summary judgment is inappropriate where there are issues of motive and intent as related to the material facts. See Poller v. Columbia Broad. Sys., 368 U.S. 464, 473 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); see also Dominguez–Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent ... are questions better suited for the jury").

Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (internal citations omitted). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw unreasonable inferences or credit bald assertions, empty conclusions, [or] rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that are not properly supported by the record. See D.P.R. Civ. R. 56(e)("The [C]ourt

may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); see Morales v. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (citing which held that, where a party fails to reinforce factual issues with correct record citations, judgment against that party may be appropriate); see also Caraballo v. Hospital Pavia Hato Rey Inc., 2017 WL 1247872, *4 (D.P.R. May 31, 2017).

Most notably, if a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. See Velez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004). Furthermore, the district court must take as true any uncontested statements of fact. Id. at 41–42; see D.P.L.R. 311.12; see Morales, 246 F.3d at 33 ("This case is a lesson in summary judgment practice.... [P]arties ignore [Rule 311.12] at their own peril, [and] ... failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.")(internal citations and quotations omitted). Nonetheless, the immediately above standard, as to lack of answer by the non-mover does not mean that summary judgment will be automatically entered in favor of the moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." See Velez, 375 F.3d at 42.

## III.    Discussion

The Court shall first address Axiscare's motion for summary judgment on Figueroa's claims of disability and gender based discrimination and retaliation. As such, to the extent that

Figueroa's claims against Cardinal are contingent on her claims against Axiscare, they fail. Thus, the Court shall only address Figueroa's claim against Cardinal for failure to hire.[8] Finally, the Court shall address Torres's claims against Axiscare.

A. **Figueroa's** ADA Claim for Disability Discrimination

The ADA forbids employers from discriminating against qualified persons in "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" because of a person's actual or perceived disability. 42 U.S.C. § 12112(a).

In order to establish a claim under the ADA, a plaintiff may rely on direct or circumstantial evidence. Where – as here – "smoking-gun" evidence is lacking, the Court must invoke the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this test, the plaintiff must first establish a prima facie case of disability discrimination. Figueroa must prove that: (1) she was "disabled" within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) she was discharged or adversely affected, in whole or in part, because of her disability. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82–83 (1st Cir. 2008). If Figueroa establishes a prima facie case of disability discrimination, the burden shifts to Axiscare, which must state a legitimate, non-discriminatory reason for the challenged action. Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 186–87 (1st Cir. 2011). Once this is done, the onus shifts back to the plaintiff to "to show that the employer's justification is mere pretext cloaking discriminatory animus." Id.

---

[8] The Court shall provide a summary of the relevant facts within that section.

In this case, Plaintiff fails to muster enough evidence to support the first and third prongs of her prima facie case, namely: that she was disabled, as the term is understood by the ADA; and that she suffered any adverse employment action because of her disability.

1. **Figueroa** was not "disabled" under the ADA

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. Figueroa only claims that she fits within the first definition. Thus, Figueroa must show that (1) she suffered from a physical or mental impairment; (2) which affected a major life activity; (3) to a substantial degree. See Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 155 (1st Cir. 1998) (citing Abbott v. Bragdon, 107 F.3d 934, 938–39 (1st Cir. 1997)). Figueroa fails in showing the above cited elements.

In her complaint, Figueroa specified two sources of disability. The first was the alleged "transient ischemic attack" (TIA) or "micro-stroke" which left her with facial paralysis. The second was her alleged diagnosis of major depression. The record, however, offers no support for the notion that either condition substantially limited any major life activity. Figueroa, therefore, was not disabled within the meaning of the ADA. The Court explains hereafter.

The TIA occurred during the first week of June, 2012. During work hours, one of Figueroa's co-workers noted that Figueroa's mouth became "twisted." See ECF No. 83-1, ¶ 48; ECF No. 94-1, ¶ 48. Figueroa went to Dr. Blasini, who allegedly diagnosed her with a "micro-stroke." See ECF No. 83-1, ¶ 48. For the purpose of establishing a disability under the ADA, these facts are insufficient.

Although Plaintiff claims that she "provided the medical certificate" to Marrero and Annette Avilés (Axiscare denies this), the medical certificate itself is not on record. While

Figueroa can certainly testify as to the symptoms she experienced, none supports her contention that she was *diagnosed* with a TIA, as Figueroa is not a medical expert. The only person who could testify as to Figueroa's medical condition at that time is Dr. Blasini himself (at least concerning the medical conclusion contained within the alleged certificate). But Dr. Blasini is an unannounced witness by plaintiff.

Hence, the record only supports the notion that Figueroa suffered a condition that "left her mouth twisted." However, there is no evidence showing that this condition substantially affected any major life activity.[9] Moreover, Axiscare cited to caselaw holding that TIAs, given their acute nature, are not considered disabilities under the ADA. See Feldman v. Law Enforcement Associates Corp., 955 F. Supp. 2d 528, 538 (E.D.N.C. 2013) aff'd, 752 F.3d 339 (4th Cir. 2014) (a TIA is an acute condition that is different from the more chronic conditions "that Congress intended to include within the definition of a disability"); Adams v. Pierce County, 2014 WL 1116724 (W.D. Washington March 20, 2014) (holding that plaintiff was not disabled after a single incident of TIA). Figueroa counters with nothing substantial; therefore, the Court finds that she was not disabled within the meaning of the ADA due to the alleged TIA.

The second claimed ADA disability stems from Figueroa's alleged depression. Although Figueroa's allegations on this front are more expansive than those relating to the TIA, they are still insufficient to clear the bar. As Axiscare correctly argues, none of the documents that she submits in support of her contention that she was suffering from major depression are

---

[9] Figueroa later appears to argue that her TIA contributed to her depression. For instance, she reported feeling "slower," speaking "heavily" and that she did not have "the same attitude as before." See e.g. Docket 108-10, p. 6. However, even if that were the case – doubtful on this record, given the evidentiary issues identified further below – Figueroa never argued that these symptoms substantially impaired any life activity. Moreover, there is no evidence showing that Axiscare was aware of these alleged aftereffects.

properly authenticated. <u>See</u> Fed. R. Evid. 901. What is worse, when confronted with this argument, Figueroa ignored it.[10] She offered no counterargument (for instance, that the document is self-authenticating, <u>see</u> Rule 902), let alone any affirmative evidence (such as an affidavit from the doctors who issued the certifications and made diagnoses, <u>see</u> Rule 901(b)(1)), which would clear this relatively short hurdle. Any such argument is therefore waived, thus, these documents are inadmissible. <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1st Cir. 2000) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)") (citation and internal quotation marks omitted). In sum, Figueroa did not present an adequate record for summary judgment; the evidentiary black hole left behind by plaintiff swallows what little remained of the claim of a disabled person within the meaning of the ADA.

Even if these documents were properly authenticated, Figueroa's claim that she was disabled under the ADA remains short of the standard. The Court summarizes the available evidence on this point below, mindful that the relevant time for assessing the existence of a disability is the time of the adverse employment action. <u>See</u> <u>Richardson v. Friendly Ice Cream Corp.</u>, 594 F.3d 69, 80 n.8 (1st Cir. 2010); <u>accord</u> <u>E.E.O.C. v. Chevron Phillips Chem. Co., LP</u>, 570 F.3d 606, 618 (5th Cir. 2009) (collecting cases).

The first mention of depression in the timeline of this case was September 19, 2012. At that time, Dr. Socorro Figueroa (Dr. Figueroa) diagnosed Figueroa with "severe major depression." <u>See</u> ECF No. 83-1, ¶ 49. In a follow-up visit, Dr. Figueroa noted that her patient felt pressured at work, and appeared "sad, down and slightly tearful." <u>Id.</u> at ¶ 50. At the same

---

[10] Even though Figueroa's sur-reply was stricken from the record, the Court reviewed its contents to verify that she never provided any argument or counterstatement of fact on this matter.

time, she found that Figueroa was "logical and coherent" and presented "no evidence of suicidal ideas, nor active ravings." Id. Figueroa never provided any of this information to Axiscare, which constitutes sufficient to dismiss the claim. See ECF No. 83, ¶ 33; see also ECF No. 94-1, ¶ 52; Reed v. LePage Bakeries, Inc., 244 F.3d 254, 260–61 (1st Cir. 2001) (noting that the ADA imposes liability on the employer only for the "known" limitations of an employee) (citing 42 U.S.C. § 12112(b)(5)(A)).

Further, even if Axiscare received that information, the claim would notwithstanding, fizzle. For starters, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient" to prove the condition imposed a substantial limit to a major life activity. Ramos–Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011); see also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir.2002) ("It is insufficient ... to merely submit evidence of a medical diagnosis of an impairment."). Instead, Figueroa must produce sufficient evidence that her impairment was "profound enough and of sufficient duration, given the nature of her impairment," to significantly restrict her life activities. Id. at 241 (citing Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001)). Besides the diagnosis, Dr. Blasini does not mention any limitation or restriction that the depression imposed on her patient. Further, there is no evidence showing that Figueroa's depression significantly curtailed any major life activity. The record actually suggests otherwise, since Figueroa admits that from September 19, 2012 to February 13, 2013 – a period during which she claims she was depressed – she was still "able to work" and perform the functions and duties of her position. See ECF No. 83, p. 21. Moreover, during that period, Figueroa never requested any reasonable accommodation. Cf. Reed, 244 F.3d at 260 ("Because an employee's disability and concomitant need for accommodation are often not known to the employer until the employee requests an

accommodation, the ADA's reasonable accommodation requirement usually does not apply unless "triggered by a request" from the employee.").

The next set of events related to Figueroa's depression happened almost five months later. On February 13, 2013, coincidently, barely two days after Marrero sent Figueroa the email with the results of his investigation, Figueroa visited two doctors: her psychiatrist, Dr. Figueroa; and a neurologist, Dr. Ivonne Fraga Berríos. See ECF No. 83-1, ¶ 52. While both doctors provided Figueroa with medical certificates, there is no evidence that Figueroa ever provided Axiscare the certificate issued by Dr. Figueroa. Axiscare only admits that it received the certificate issued by the neurologist. That certificate, in turn, states that Figueroa would be able to return to work within two weeks; that is, by February 27, 2013. See ECF No. 94-1, ¶ 52. The medical certificate, however, lacks to provide any diagnosis nor mention that Figueroa was impaired in any form. Id. Without more, the record does not support a finding that Figueroa was disabled within the meaning of the ADA at that time.

A couple of days later, on February 20, Figueroa was hospitalized at First Hospital Panamericano. See Docket 83, ¶ 53. The hospital discharged her a week later, on February 27.[11] In the discharge papers, the therapist noted that Figueroa reported

> feeling with a depressed mood, with sadness, crying with no energy, not motivated, with poor concentration, low appetite, insomnia, low self-esteem, psychomotor delay and dysfunctional, anguish, frustration, disabled, unsuccessful, anxiety, irritability, isolation, insecurity, with bad mood, anger with poor management of emotions and situations, with poor judgment.

---

[11] The record is clear that Figueroa was not at the hospital for the entire week. In particular, it is uncontested that on February 23, Figueroa went to her office and accessed her computer terminal. See e.g. ECF No. 83-1, ¶ 40.

ECF No. 108-10, p.6. Closer inspection, though, reveals that this document fails to support Figueroa's argument.[12]

The paragraph cited above reflects the therapist's notes regarding Figueroa's statements. Another section of the report, in contrast, contains the therapist's conclusions pertaining to the physical and mental exams performed on Figueroa. Those sections provided the therapist with numerous boxes indicating if the patient experienced any of a broad range of physical or mental symptoms, including a section titled "other," where the therapist could add any relevant observation. Although Figueroa claimed she suffered from a litany of ailments, the therapist marked "no" on every box, including the section entitled "other."[13] The therapist also made other observations that squarely deny Figueroa's allegations: Figueroa was alert and had no problems concentrating during the interview; she demonstrated the ability to communicate clearly and logically; and had no difficulties following instructions and in processing and searching for information. See id. at p. 5.

In the end, the therapist provided only an "initial psychiatric diagnosis" of major depression, and noted that the patient required an additional physical and medical evaluation. Id. Notably, the therapist did not confirm any of the symptoms Figueroa alleged she was suffering. Contrary to Figueroa's suggestion, the report does not support the contention that she was substantially impaired from performing any major life activity due to her condition. Ramos–Echevarria, 659 F.3d at 241.

---

[12] There is no proof that Figueroa ever provided this report to her employer. Axiscare does admit that it received Figueroa's application for disability benefits, but the application itself is not on the record, and Figueroa never mentioned whether that application contained the report in question.

[13] For instance, the therapist marked "no" on the box labeled amnesia – which conflicts with Figueroa's statement that she sometimes "forgot things."

However, Figueroa admits that just a month later, she returned to the office with a medical certification clearing her to work. See Docket 83, ¶ 52; see Leeds v. Potter, 249 Fed.Appx. 442, 449 (6th Cir. 2007) (unpublished) ("an employer cannot be said to know or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation. The natural assumption in such a case is that the employee is fully fit for work."). Although the Court has not been able to locate this certificate on the record, Figueroa never says the document contained any limitations or restrictions stemming from her condition.

Read in context, then, the therapist's report denies Figueroa's contention that she was disabled within the meaning of the ADA. Ramos–Echevarria, 659 F.3d at 241; see also Deister v. Auto Club Ins. Ass'n, 647 F. App'x 652, 656 (6th Cir. 2016) (noting, in *dicta*, that a diagnosis of "'major depression-recurrent,' without evidence that earlier manifestations of the condition had been disabling, and without evidence that [the plaintiff's] condition resulted in substantial limitation of his major life activities" at the time of the adverse employment action, is insufficient to show disability under ADA).

One final observation closes this matter. As noted above, an employer cannot face liability for disability discrimination if not knowing the employee was disabled within the meaning of the ADA. See 42 U.S.C. § 12112(b)(5)(A); Reed, 244 F.3d at 260–61 (noting that the ADA imposes liability on the employer only for the "known" limitations of an employee); Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 805 (8th Cir. 2014) ("At a minimum, [the plaintiff] must show that the decisionmakers knew about her alleged disability"); accord Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010) (to sustain a failure-to-accommodate claim, the plaintiff must show that the employer

"knew or should reasonably have known of his handicap"). The employee carries the burden of providing the employer with sufficient information so that the employer may reasonably deduce this fact and act accordingly. Miller v. National Cas. Co., 61 F.3d 627, 629–630 (8th Cir. 1995) (it is plaintiff's obligation to inform employer about mental illness. The employer is not obligated "to divine the presence of a disability" from an employee's bad work habits or from a "stressful family situation"). In this case, Figueroa never provided Axiscare with many of the documents she now claims support her contention of disability. See, e.g., *supra* footnote 11 & ECF No. 94-1, ¶ 52. To the extent that Figueroa's claim depends on documents or information that was not provided to Axiscare (for example, all of the documents arising from post-termination doctor visits), plaintiff fails as a matter of law.[14]

2.  **Figueroa** did not suffer any adverse employment action because of her alleged disability

Figueroa also fails to meet the third prong of her prima facie test; that is, whether she suffered any adverse employment action because of her alleged disability. While the evidence concerning whether Figueroa was disabled under the ADA is either inexistent or inadmissible (as discussed above), the Court shall assume for purposes of this section that Figueroa was disabled within the meaning of the ADA by 2012. Even with this second opportunity, Figueroa fails to show that she suffered any adverse employment action because of her disability.[15]

---

[14] In her stricken sur-reply, Figueroa says these post-termination records are relevant since they relate "to the actions from Marrero and Avilés taken against her that affected her mental and emotional condition." See ECF No. 113, p. 3. While they could be relevant for purposes of establishing damages, they are decidedly not for purposes of establishing that the employer knew of Figueroa's condition.

[15] The Court further notes that, beyond citing the cases that discuss the elements of a claim under the ADA, Figueroa does not provide a single case in support of her arguments. Instead, Figueroa's opposition on this point covers nine pages, and consists almost entirely of a carbon-copy of her statement of facts.

Before embarking on this task, the Court must clarify the applicable standard of causation for a disability discrimination claim under the ADA. In particular, the Sixth and Seventh Circuits have "have resisted efforts to transplant Title VII's mixed-motive remedies into the ADA," Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012), and have thus held that these claims are subject to a "but-for" causation standard. See Lewis v. Humboldt Acquis. Corp., 681 F.3d 312, 317–22 (6th Cir. 2012) (en banc); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961–64 (7th Cir. 2010) (same). In Palmquist, the First Circuit held that claims under the Rehabilitation Act must be proven according to the but-for standard. While the First Circuit has not addressed whether this standard is also applicable to claims under the ADA, this is all but a foregone conclusion since the relevant text is the same for both statutes. Further, there is caselaw from this district indicating that the Sixth and Seventh Circuit's *ratio* is persuasive. See Figueroa Guzman v. WHM Carib, LLC, 169 F. Supp. 3d 304, 309 (D.P.R. 2016). As such, the Court shall employ the but-for standard here.[16] The Court further notes that Figueroa appears to concede the point. See ECF No. 83, p. 26 (stating that the third element of the prima facie case requires her to show that the adverse employment actions were taken "because of her disability").

The "but-for" standard considerably heightens the standard for Figueroa. Under the "motivating factor" analysis applicable to Title VII claims, liability will attach if the plaintiff

---

[16] In taking this route, the Court is mindful that at least one judge in this District has declined to implement a but-for causation standard in an ADA case. See Hernandez-Echevarria v. Walgreens de Puerto Rico, Inc., 121 F. Supp. 3d 296, 305 (D.P.R. 2015). Yet upon closer examination, this decision does not represent the district court's disagreement with Lewis or Serwatka, but rather a decision based on the defendant's waiver of the argument. In Walgreens, the defendant did not appear to cite either case, but rather argued that the Supreme Court's decision in Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) incorporated such a standard into the ADA. As the district judge correctly noted, the argument failed since Nassar dealt with the standard applicable to retaliation claims, not to the underlying disability discrimination claim under the ADA.

can show that the employer was motivated by discrimination, *even if* the employer also had a legitimate, nondiscriminatory reason for the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2523 (2013) (under the mixed-motives standard, it suffices to "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."). But under the ADA, as Lewis and Serwatka held, a plaintiff must show that the disability was the "but for" cause of the employer's adverse decision. That is, for liability to attach upon this claim, Figueroa must show "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct". Nassar, 133 S. Ct. 2517, 2522–23 (2013) (noting that this standard is drawn from tort law, under which an action "is not regarded as a cause of an event if the particular event would have occurred without it."). Expressed differently, that her disability "was the 'reason' that [Axiscare] decided to act." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009).

Not every disputed employment action is "adverse" within the meaning of the ADA. To give rise to liability, the employer's action must be "material" in that it "affects employment or alters the conditions of the workplace[.]" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (internal citations and punctuation marks omitted). This "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Id. (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). In short, it must be more disruptive than a "mere inconvenience or an alteration of job responsibilities." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).

Although Figueroa's complaint contains a veritable jungle of allegations, she appears to acquiesce to Axiscare's identification of the following disputed employment actions: 1) increased workload and decreased support personnel after the sale to Cardinal; 2) December 2012 work performance evaluation and reduction in bonus; 3) responsibility for the theft of company property.

As the Court examines the matter, Plaintiff also disputes a fourth alleged employment action, but this one requires a close review. As Axiscare notes, the complaint does not contain a separate failure-to-accommodate claim. Instead, Figueroa placed these allegations within her ADA retaliation claim. But after examining Figueroa's filings, the Court concludes that Figueroa's own allegations show that her claim is best understood as a direct discrimination claim under a failure-to-accommodate theory, rather than as an ADA retaliation claim. Specifically, Figueroa claims that after she suffered her TIA, she made a series of reasonable accommodation requests to Marrero, including the ability to work from home and for a personal assistant. In her pleadings, Figueroa claims that Marrero retaliated against her for engaging in that protected action simply by denying her request for accommodation. Figueroa does not assert with any clarity that Marrero took other adverse employment actions because of her request. Figueroa's claim, thus, fits squarely within the mold of a direct discrimination ADA claim.

The latter scenario is the easiest to disregard. Here, it is critical to note that Figueroa waived any opposition to Axiscare's argument that Figueroa was disabled due to the transient ischemic attack. This limits the temporal scope of the adverse action analysis significantly, since the TIA occurred around June 2012, and the next possible source of disability arose in September 2012, when she was first allegedly diagnosed with depression. The above also spells

doom for Figueroa's failure-to-accommodate claim, because Figueroa did not qualify as disabled under the ADA by the time she made her requests for accommodation.

The next disputed employment action arose after Axiscare sold part of its operations to Cardinal. Figueroa complains that, following the sale, she was short-handed and had more work. Without more, this fact is not enough to clear the prima facie hurdle. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23–25 (1st Cir. 2002) (the fact that plaintiff was required to do more work, even under extreme supervision, did not rise to level of an adverse employment action). Further, Figueroa has not shown that her disability was the reason for which she had more work and less staff. As she admits in her deposition, this was due to the sale of the operation to Cardinal.

The next disputed employment action is the December 2012 reduction in bonus. Figueroa claims that the bonus she received that year was substantially lower than what she had received the previous year. This is evidenced in an email containing a spreadsheet listing employee bonuses for December 2012. See ECF No. 83-7. The document shows that, while Figueroa had the largest bonus by far across all employees listed,[17] she also suffered the largest reduction in bonus – from $13,500 to $10,000. Other evidence contradicts this lower bound. For instance, the December 2012 earnings statement submitted by Figueroa shows that her Christmas bonus for that year was actually $11,000. See ECF No. 83-6. Accordingly, there is doubt whether the numbers listed in the spreadsheet were, in fact, the final bonuses awarded to the employees.

---

[17] Interestingly, none of the employees that Figueroa contends are adequate comparators in terms of their job duties for her gender-related Equal Pay Act claim (Jose Ruiz, Jose Hernandez, Carmelo Sierra, and Edgar Mercado – see Docket # 83, p. 12) are named in this list.

Certainly, the reduction of a bonus that was ordinarily granted to an employee may constitute a material adverse action – particularly if there is no change in circumstance that would warrant departure from the norm. Here, however, Axiscare points out that the company had a fixed amount of money to distribute as Christmas bonuses to its employees. The company based its decision to award a particular bonus on several factors, "including legal requirements, performance and the Company's financials." See ECF No. 65-1, ¶ 13. Marrero explained that in 2012, Axiscare's net income went down, and so the Christmas bonus amount was also reduced. Figueroa has no answer to such claim. Since the company's financials played a role in the decision to lower the bonus, Figueroa cannot show that, *but for her disability*, Axiscare would not have reduced her bonus for that year.

Figueroa also alleged in her complaint that Axiscare gave her a poor performance evaluation in 2012, in contrast with prior years. But in her deposition, she admitted it "wasn't a bad evaluation." See ECF No. 79-1, p. 28. More importantly, she does not explain how the evaluation resulted in any tangible adverse employment action – that is, plaintiff fails to explain how the performance evaluation affected her employment or altered the conditions of her workplace. Therefore, the instant claim fails from the outset.

The final disputed employment action relates to the theft of merchandise from the company premises. To avoid repetition, the Court shall incorporate by reference the facts related to this incident above. See *supra*, p. 4. It is uncontested that Marrero hired a third-party to investigate the incident, and based on the investigator's report, concluded that Figueroa had been negligent in her duties as Logistics Director. Thus, from the outset, it is clear that any reprimand issued to Figueroa had nothing to do with her disability.

On the other hand, courts have routinely held that "criticism is an ordinary and appropriate feature of the workplace." <u>Reyes-Feliciano v. Marshalls</u>, 159 F. Supp. 3d 297, 305 (D.P.R. 2016) (citing <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1242 (11th Cir. 2001)). Accordingly, "reprimands and warnings" are a "proper instrument for management to focus employees' attention on the need to correct some workplace behavior that the employer perceives as needing correction." <u>Id.</u> (citing <u>Fernández–Ocasio v. Walmart Puerto Rico, Inc.</u>, 94 F.Supp.3d 160, 173 (D.P.R. 2015). Marrero's email to Figueroa stating that she had been negligent in her duties does not fall outside these bounds. Finally, it is uncontested that – besides the reprimand – Axiscare never took tangible employment action against Figueroa with respect to the theft. Accordingly, there is no adverse employment action to be found here.

Because Figueroa has failed to provide first and third elements of her prima facie case, her disability discrimination claim under the ADA fails as a matter of law.

B. <u>Equal Pay Act and Title VII Sex Discrimination Claims</u>

Figueroa complains that Axiscare provided preferential treatment to her male coworkers regarding their compensation and benefits, all in violation of the Equal Pay Act (EPA). This claim also fails.

The EPA makes it unlawful for an employer to discriminate based on sex

> by paying wages to employees […] at a rate less than the rate at which he pays wages to employees of the opposite sex […] for equal work on jobs the performance of which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

To prevail on such a claim, "the plaintiff must first establish a prima facie case by showing that the employer paid [1] different wages to [2] specific employees of different sexes for [3] jobs performed under similar working conditions and requiring equal skill, effort and responsibility." Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). The standard constitutes a more demanding standard than the McDonnell Douglass framework "because it requires the plaintiff to identify specific employees of the opposite sex holding positions requiring equal skill, effort and responsibility under similar working positions who were more generously compensated." Id. Figueroa falls short of complying with the standard required. The Court explains.

It is uncontested that, at the time of her termination, Figueroa had the third highest salary in the company – after Marrero and the company's female pharmacy regent. See Axiscare's Statement of Uncontested Facts (Axiscare's SUF), ECF No. 67-1 ¶ 5-6.[18] Thus, from the outset, it is hard to understand how Figueroa has a claim here at all. The record is clear that if Axiscare discriminated at all, it did so *in her favor*.

Unfazed, Figueroa presses on. Over the course of this litigation, Figueroa identified several different male employees that she claims received preferential treatment regarding payment and benefits. In her complaint, for instance, she alleged that two individuals (Carmelo Sierra and Jose Hernandez) had higher salaries than her. But the wage forms (W-2) of these employees provided by Axiscare showed that it was Figueroa who held the highest salary among them. Faced with such evidence, Figueroa now attempts to muddle the summary

---

[18] Further, Figueroa does not contest that she received "the highest bonus among all employees" for the year 2012. Rather, she merely alleged in her deposition that other employees "had a higher salary" than her. Yet she fails to establish that she had personal knowledge of these facts. See ECF No. 83-1, p. 5. For purposes of summary judgment, such hearsay is inadmissible. See Fed. R. Civ. P. 56(e); Perez v. Volvo Car Corp., 247 F.3d at 316; Insight Tech., Inc. v. SureFire, LLC, 2007 WL 3244092, at *5.

judgment record by claiming that *other* employees (which she never identified nor requested information about them during the discovery period, see ECF No. 94-2 at p. 6) had higher salaries (which she never specified).

What is worse, she attempts to explain the absence of this information on Axiscare, ignoring that she bears the burden to sustain her allegation with "definite, competent evidence." See Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 30 (1st Cir. 2014) ("At the summary judgment stage, the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue."). Axiscare's proffered facts on this front are therefore uncontroverted. Further, to the extent Figueroa presents additional facts intended to show that these other employees enjoyed better non-salary benefits, these facts must also be disregarded, as they are not included in a separate and adequately supported statement of facts, as required by Local Rule 56(c). See Carreras v. Sajo, García & Partners, 596 F.3d 25, 31 (1st Cir. 2010); Morales v. Orssleff's EFTF, 246 F.3d. at 33. So, Figueroa's claim falters on the first prong; that is, she cannot show the employer incurred in gave preferential treatment to those male employees.

Her EPA claim also fails the third prong of the test. On this point, Figueroa need not prove that the jobs held by the male employees she identified are identical to hers. However, it is her burden to demonstrate that the "skill, effort and responsibility required in the performance of the jobs are 'substantially equal.' " Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992) (citing 29 U.S.C. § 206(d)(1)). In her opposition, Figueroa argues that the male employees "occupied similar and/or equivalent managerial positions in comparison with Figueroa." See ECF No. 83 at p. 12. Beyond this conclusory allegation, though, Figueroa provides no details from which the Court may conclude that those employees'

job functions were "substantially equal" to those performed by Figueroa. Her EPA claim, therefore, must be dismissed.

Axiscare argued in its motion for summary judgment that the record did not support a Title VII claim of sex discrimination for the alleged differential treatment in pay. In her opposition, Figueroa demurred and added that the facts also established an EPA violation. Because the Court has already determined that Figueroa failed in showing that Axiscare gave any preferential treatment to those male employees, any sex discrimination claim premised on these facts would fail as well. See e.g. Rivera-Rivera v. Medina & Medina, Inc., 229 F. Supp. 3d 117, 122 (D.P.R. 2017) (granting summary judgment on sex and age discrimination claim; plaintiff did not muster enough evidence to show that she received differential treatment when compared to younger male counterparts).

On the other hand, Figueroa's statement of additional facts does contain allegations that hint at sex discrimination. In his deposition, for instance, Luis Torres testified that Figueroa was "treated differently in comparison with the other male employees, since the male employees that worked in the office arrived at 11:00 a.m., or even at [noon], and left at [4 or 5] p.m., while Figueroa had to arrive early and leave late at night and was 24 hours on call." See ECF 83-1, ¶ 45. However, as noted above, Figueroa does not provide any evidence showing that those employees had similar job duties, and that therefore her comparatively tougher schedule could be attributed to discrimination. In addition, Torres stated that Marrero "told Figueroa that [her] work was for male employees and not for females." Id. at ¶ 47. For starters, this allegation lacks sufficient context to infer that it was discriminatory in nature. More to the point, Figueroa has failed to tie this statement to any adverse employment action. Thus, any claim of direct sex discrimination premised on these facts must also fail. In the end, the best

interpretation of Figueroa's jumbled brief is that these statements are geared towards her hostile

work environment claim, which is addressed below.

Finally, Axiscare argued that Figueroa's claims under Puerto Rico Law 100 and 69

should be analyzed under the same rubric as the federal law claims, so the dismissal of the latter

triggers the dismissal of the former. Figueroa fails to respond to this argument, and so those

claims shall share the same fate. See Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st

Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not be

granted, that ground is waived and cannot be considered or raised on appeal.").

C.   Sex and Disability-Based Hostile Work Environment Claim

Next, Figueroa complains that she was harassed at work due to her gender and disability,

in violation of Title VII and the ADA. To establish a claim for hostile work environment under

Title VII, Figueroa must show that: 1) she was a member of a protected class; 2) she was subject

to unwelcome harassment; 3) the harassment was based upon her sex or gender; 4) the

harassment affected a term, condition, or privilege of employment; and 5) that the employer

knew or should have known of the harassment and failed to take prompt, remedial action. See

Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007). Courts use an

analogous test, with appropriate tweaks, to assess disability-based hostile work environment

claims under the ADA. See Rodriguez Velazquez v. Autoridad Metropolitana de Autobuses,

502 F. Supp. 2d 200, 209 (D.P.R. 2007).

The Court has already determined that Figueroa failed to establish that she was disabled

within the meaning of the ADA. Because she is not in a protected class, her ADA hostile work

environment claim fails on the first prong. On the other hand, Figueroa has failed to provide

any evidence showing that the alleged sex-based harassment "affected a term, condition, or

privilege of employment." The Court simply could not locate this argument in plaintiff's brief. What is worse, in that entire section, Figueroa fails to discuss any applicable caselaw. Thus, her Title VII claim fails on the fourth prong.

But these are not the only reasons that Figueroa's hostile work environment claim fails. In order to sustain such a claim, Figueroa must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (Title VII); Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (same, for ADA). The alleged harassment that she identifies falls far short of this standard.

In her complaint, Figueroa claimed that "constantly, almost on a daily basis," Marrero made comments regarding her disability. Among other things, she claimed that Marrero berated her because she was "sick, useless, and worthless for the operation;" that after her TIA, she was "slow" and should seek "social security benefits." Marrero also spoke to Figueroa with an "aggressive tone" and using "foul language." See e.g. ECF No. 10, ¶¶ 7 & 26. However, in her deposition, Figueroa could not identify any of these alleged comments nor provide any context. Without the benefit of "context, specific dates, [and] the precise words used," these remarks are simply too vague to satisfy the summary judgment standard. Rivera-Rivera v. Medina & Medina, Inc., 229 F. Supp. 3d 117, 125 (D.P.R. 2017). And even if she could, these comments are "too mild to form the basis of a hostile work environment claim." See Villegas–Reyes v. Universidad Interamericana de P.R., 476 F.Supp.2d 84, 91 (D.P.R. 2007) (finding that referring to the plaintiff as "anciana," "vieja," "abuela," and telling her that "she was too old and should retire" was insufficient to maintain a hostile work environment claim); Marrero v. Schindler

Elevator Corp., 494 F.Supp.2d 102, 110 (D.P.R.2007) (finding that calling the plaintiff "viejo," "viejito," and "viejo pendejo" "on a daily basis" are not sufficient for a hostile work environment claim); Fernández–Ocasio v. WalMart Puerto Rico Inc., 94 F.Supp.3d 160, 178 (D.P.R. 2015) (remarks that the plaintiff " 'was good for nothing' because she said she was in pain and should apply for social security," while "insensitive and out of line," are insufficient to sustain a hostile work environment claim under First Circuit as there was no "context"). [19]

For these reasons, Figueroa's claim for hostile work environment under the ADA and Title VII fails.

D. **Figueroa's** claims of retaliation

Next, Figueroa alleges that she was subject to unlawful retaliation under Title VII, the ADA, and Puerto Rico laws 100, 69, 44, and 115. As a threshold matter, Axiscare correctly argues that Figueroa's claims Puerto Rico laws 100 and 44 must be discarded because neither statute provides a cause of action for retaliation. Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 402 (D.P.R. 2007). Thus, those claims are **DISMISSED** with prejudice.

The anti-retaliation provisions of Title VII and the ADA are essentially identical. Both forbid retaliation against an employee who has opposed any practice made unlawful by those statutes. They also prohibit retaliation against employees who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under either statute. See 42 U.S.C. § 12203 (ADA); 42 U.S.C.     § 2000e–3 (Title VII). It is no surprise, then, that in order to establish a prima facie retaliation claim under either statute, Figueroa must

---

[19] The same goes for the comments identified by Torres in his deposition.

show the same three elements. Namely, that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (ADA); see also Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014) (Title VII).

In contrast to the substantive portions of Title VII and the ADA, their respective anti-retaliation provisions are not limited to actions affecting employment terms and conditions. Instead, in the context of employment retaliation, an action is materially adverse if it "might have dissuaded a reasonable worker" from engaging in the protected conduct. Burlington, 548 U.S. at 54 (internal quotations and citations omitted); see also Carmona-Rivera, 464 F.3d at 20. Also, retaliation under either statute "must be proved according to traditional principles of but-for causation;" this "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013) (Title VII); see also Palmquist v. Shinseki, 689 F.3d 66, 74–75 (1st Cir. 2012) (ADA).

Figueroa identifies four instances where she engaged in protected conduct that allegedly resulted in retaliation. In chronological order, these are: (1) a December 2009 complaint regarding differential treatment in salary; (2) her request for reasonable accommodation made after suffering a facial paralysis at work in June 2012; (3) adverse action taken after making her internal complaint to Marrero in December 2012; and (4) her termination following the EEOC charge she filed in March 2013. The Court shall examine these scenarios under the standards of Title VII and ADA retaliation, as applicable.

        i.    <u>December 2009 Complaint</u>

This entire section hinges exclusively on ¶ 5 of Plaintiff's opposing statement of fact, which the Court already determined it would disregard for failure to comply with the Local Rules. <u>See</u> footnote 4, *supra*. Nevertheless, even if Figueroa had properly presented those facts, they would not support a claim of retaliation.

Figueroa alleges that in December 2009, she met with Marrero to discuss an increase in her compensation, since she believed there were other employees who had better salaries. <u>See</u> ECF 83-1, ¶ 5. In her deposition, Figueroa declared that Marrero agreed to increase her compensation, which Marrero confirmed through a letter dated February 12, 2010. <u>Id.</u> However, Figueroa claims that the promised increase in compensation never materialized. <u>Id.</u>

Figueroa asserts that Marrero's failure to follow through with the promised increase in salary was sex-based retaliation against Figueroa's request for a raise. Axiscare counters that Figueroa's W2 forms show that her salary significantly increased from 2010 to 2011. Regardless of the merits of this dispute, it is clear that any claim of retaliation based on this interaction is time barred.

In Puerto Rico, employees have 300 days to challenge an unlawful employment practice under Title VII. See 42 U.S.C. § 2000e-5(e)(1). On the other hand, claims under the EPA are subject to a two-year statute of limitations. Here, the alleged unlawful conduct occurred more than three years before Plaintiff filed her complaint in this case. Consequently, any claim for sex-based retaliation grounded on this factual scenario must fail.

ii.    Alleged adverse action taken after requesting reasonable accommodation in June
       2012

The facts pertinent to this discussion are found in page 3, *supra*. To recap, Figueroa claims that although Marrero provided some accommodations, they were not satisfactory, which is why the Court analyzed that claim under the rubric of direct discrimination. Nevertheless, even if Figueroa could bring both a direct discrimination and a retaliation claim under the same set of facts, the retaliation claim would inevitably fail.

In Carmona-Rivera, 464 F.3d 14 (1st Cir. 2006), the First Circuit addressed a claim for retaliation based on the employer's failure to provide reasonable accommodation in a timely manner. In that case, the plaintiff requested reasonable accommodation and the employer granted the request. However, according to the plaintiff, the employer unreasonably delayed the implementation of the accommodations, causing her harm.

The First Circuit held in Carmona-Rivera that the claim failed for several reasons. First, while delay might give rise to actionable harm, the record showed that the plaintiff was merely inconvenienced, rather than harmed, by the delay. More importantly, the plaintiff "failed to provide any evidence of a retaliatory intent associated with the delay in implementing her requests, or any evidence which shows that the delay was anything beyond that inherent in the workings of an educational bureaucracy." Carmona-Rivera, 464 F.3d at 20. Thus, there was no evidence from "which a reasonable jury could conclude that the delays resulted from either intentional discrimination or retaliatory behavior." Id. (citing Kosereis v. Rhode Island, 331 F.3d 207, 217 (1st Cir. 2003) and Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)). As in Carmona-Rivera, the record here does not support Figueroa's contention that Axiscare's alleged

failure to provide reasonable accommodations had *anything* to do with her disability. Thus, her purported retaliation claim must fail.

    iii.    <u>Alleged adverse action taken after making her internal complaint to Marrero in December 2012</u>

In order to avoid repetition, the Court refers the reader to the summary of events at pages 4-6 of this opinion, *supra*.

Figueroa references the events surrounding the internal investigation launched by Marrero in the section of her brief discussing her cause of action for retaliation. <u>See</u> ECF 83, p. 6. However, she never states that in making those complaints to Marrero, she engaged in any protected conduct. In fact, none of what Figueroa and Marrero discussed in the meeting had any relationship with her disability. Moreover, Figueroa never attempted to clarify whether she suffered any adverse employment action stemming from that meeting. As the Court understands, the meeting was but one link in a chain of events that culminated with Figueroa's termination. The Court shall therefore address it in the next section.

    iv.    <u>Figueroa's Termination</u>

Axiscare concedes, as it must, that Figueroa engaged in protected conduct by filing her EEOC charge in March 2013, and that her termination qualifies as an adverse employment action for purposes of Title VII and ADA retaliation. However, Axiscare asserts that Figueroa's EEOC charge and her dismissal are not causally connected. Rather, Axiscare alleges it had a legitimate, non-discriminatory reason to terminate Figueroa. Because neither sex or disability discrimination was the *sine qua non* of Figueroa's dismissal, Axiscare argues that her retaliation claim must be dismissed.[20]

---

[20] It is "textbook tort law that an action 'is not regarded as a cause of an event if the particular event would have occurred without it.' " <u>Nassar</u>, 570 U.S. at 347 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and

As the First Circuit has often noted, "simplest way to decide a case is often the best." Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013). When a defendant can offer a legitimate, non-discriminatory reason for the challenged action, "the prima facie case is a largely unnecessary sideshow." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C.Cir. 2008). Thus, the Court bypasses the prima facie case and goes straight to the question of pretext. Collazo-Rosado v. Univ. of Puerto Rico, 765 F.3d 86, 93 (1st Cir. 2014). To stave off summary judgment at this juncture, Figueroa bears the ultimate burden to show that Axiscare's proffered reasons for termination was a sham, a pretext for retaliation. Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 33 (1st Cir. 2012).

While there is no "mechanical formula" for finding pretext, Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003), there are a few guiding principles to follow. For instance, when probing for pretext, the Court must review "the record as a whole." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012). And, the "focus must be on the perception of the decision maker" – that is, "whether the employer believed its stated reason to be credible." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). The Court thus starts with Marrero's testimony on the matter.

Recall that, according to Marrero, Figueroa held a high-level executive position within Axiscare. This position required his "full confidence and trust." ECF No. 67-1, ¶ 11. Marrero

---

Keeton on Law of Torts 265 (5th ed. 1984)). Given how this causation standard works, the Court ponders whether it is possible for retaliation claims based on sex and disability to coexist. It would seem that, under this standard, a jury's determination that an employee was terminated *because of* sex-based discrimination would logically exclude any claim for disability-based retaliation, at least for the same adverse employment action. There is no need to crawl down this rabbit hole, since Figueroa has failed to show that either sex or disability discrimination was the *sine qua non* cause of her termination.

testified that, after the following series of workplace incidents involving Figueroa, he lost all trust in Figueroa:

1) Marrero's determination, based on a third-party investigation into the theft of the container from company premises, that Figueroa had been negligent in the performance of her duties[21];

2) Marrero's determination, based on his investigation into Figueroa's allegations against her coworkers, that Figueroa had not been truthful, spread rumors, and violated the privacy of other employees; and

3) Marrero's determination, based on the IT Department employee's investigation, that Figueroa had violated company policy by deleting company files from her work computer[22] without permission.[23]

From these incidents, Marrero legitimately believed that he could no longer trust Figueroa, and decided to terminate her.

Figueroa spends a large portion of her brief attempting to show that Marrero made either witting or unwitting mistakes in reaching those conclusions. Still, it is not enough "or a plaintiff merely to impugn the veracity of the employer's justification[.]" Id.; see also Rodriguez–Cuervos v. Wal–Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999) (courts may not act as super personnel departments reviewing the "merits", "rationality" or accuracy of the defendant's determinations). Instead, Figueroa must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive" – sex or disability discrimination. Id.

One of the most common ways to show pretext is to demonstrate there was a close temporal proximity between the protected conduct and the adverse employment action. Here, Figueroa argues that barely a month passed between her EEOC charge and her termination,

---

[21] The only record as to the investigation was from the private investigator, which constitutes a "rational" determination from the employer's point of view, Rodríguez-Cuervos, Id., and also based on the "record as a whole." Che v. Mass. Bay Transp. Auth., 342 F.3d at 39.

[22] Based on the "record as a whole". Id.

[23] A summary of these facts is located at pages 4-7, *supra*.

which is a sufficiently short timespan to bring this factor into the limelight. Still, "while temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough—especially if the surrounding circumstances undermine any claim of [pretext]." See Carrero–Ojeda, 755 F.3d at 720. Here, the circumstances cut straight against a finding of corporate sham and/or pretext.

For example, Marrero conducted *three separate investigations* into Figueroa's conduct prior to her EEOC charge. See Vargas-Medina, 247 F. Supp. 3d at 182 (finding no inference of pretext from temporal proximity where company initiated investigation into plaintiff's accusation of assault against a co-worker prior to plaintiff's EEOC charge, and concluded plaintiff was lying); see Wright v. CompUSA, Inc., 352 F.3d 472 (1st Cir. 2003) (holding that, despite temporal proximity of two months between complaint and dismissal, "the larger picture" undermined plaintiffs claims: performance problems began before harassment incidents, performance complaints came from other individuals besides the alleged harasser, and plaintiff admitted she had problems performing her job). All of those investigations, moreover, eroded the trust Marrero had placed in Figueroa. Even worse, the last one (involving the deletion of company files) was a violation of company policy that justifies dismissal. Vargas-Medina, 247 F. Supp. 3d at 182. The evidence also demonstrates that Marrero did not wear a blindfold when investigating Figueroa's conduct. Rather, at every turn, Marrero provided Figueroa the opportunity to challenge his findings and prove her worth. This undercuts any inference that Marrero was actively seeking to terminate Figueroa. Like in Vargas-Medina, the Court finds that the circumstances surrounding Figueroa's termination conclusively undermine her argument that temporal proximity raises any inference of pretext.

On the other hand, Figueroa can establish pretext "by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Axiscare's] proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). This is quite a heady task in the instant case, given that Marrero's state of mind and reasons for dismissal were exposed long before Figueroa filed her EEOC charge. Vargas-Medina v. Ortho Biologics, LLC, 247 F. Supp. 3d 169, 181 (D.P.R. 2017); cf. Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 221-222 (1st Cir. 2016) (finding pretext when investigation into incident began *after* employee filed her sexual harassment claims).

In her deposition, Figueroa recounted a conversation she had on April 10, 2013 (a month after filing her EEOC charge) with Axiscare's HR Manager, Avilés. Figueroa claims that Avilés informed her, specifically, that she was "being discharged due to the discrimination charge filed by her." See ECF. No. 83-1, ¶ 42.[24] When considered in a vacuum, this statement could be seen as an admission of pretext. However, in light of the "record as a whole", Che v. Mass. Bay Transp. Auth., Id., the statement fails to satisfy Figueroa's burden.

To start the analysis, there is no evidence Avilés had any authority to terminate Plaintiff's employment, or even that she participated in that decision. There is also no evidence that Marrero ever discussed the reasons for which he decided to terminate Figueroa's employment with Avilés. At best, the statement is evidence that Avilés thought Axiscare terminated Figueroa because of her EEOC charge. But that will not do. In employment

---

[24] This statement shocked Axiscare's counsel, who replied: "In other words, you are telling me… you think that […] you want me to understand or believe that Annette Avilés, the Human Resources Manager, told, you, "We are terminating you for filing a charge." ECF No. 108-4, p. 309. But at this stage, the Court cannot weigh the evidence or make any credibility determinations, so it must take the statement at face value.

discrimination cases, liability can only attach when the plaintiff shows that the *decisionmaker* was motivated by discriminatory animus. See e.g. Rogers v. City of Chicago, 320 F.3d 748, 754 (7th Cir. 2003); McMillan v. Massachusetts Soc. for Prevention of Cruelty To Animals, 140 F.3d 288, 301 (1st Cir. 1998) (even if remarks are relevant to pretext, "probativeness is circumscribed if they were made [...] by nondecisionmakers).[25] (Emphasis ours).

Notably, Figueroa's counsel did not take any depositions in this case, which could have provided further context for Avilés' statement. Figueroa, then, must be "bound be the consequences of litigation strategy." Trans–Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008); Nayyar v. Mount Carmel Health Sys., No. 2:10-CV-135, 2012 WL 203418, at *4 (S.D. Ohio Jan. 24, 2012) ("Having waited so late to take key depositions, plaintiff must live with the consequences of his litigation strategy."). Given this evidentiary fog, it is unreasonable to infer that Marrero's stated reasons for the dismissal were a sham because of a subordinate's belief, especially when there is no inference showing that Avilés' statement actually reflected Marrero's state of mind.

At most, Figueroa has created a "weak issue of fact as to pretext on the face of strong independent evidence that no discrimination occurred." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002). At this juncture, that is not enough to "deflect the swing of the summary judgment scythe." Mulvihill v. Top–Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Moreover, even if this statement qualified as "minimally sufficient evidence" of pretext,

---

[25] Interestingly, the Seventh Circuit has recognized a so-called "cat's paw" theory of liability, where liability can be imputed to the employer if the plaintiff can show that a "biased employee had a 'singular influence' over the ultimate decisionmaker." Schandelmeier-Bartels v. Chicago Park Dist., 634 F.3d 372, 379 (7th Cir. 2011). To the Court's knowledge, however, the First Circuit has not adopted this theory. Regardless, there is absolutely no evidence showing that Avilés ever attempted to influence Marrero's decisionmaking.

Acevedo–Parrilla v. Novartis Ex–Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012), Figueroa has failed to show that discriminatory animus was the *sine qua non* of her dismissal – Marrero's previous investigations provided legitimate support to terminate her employment. See Sieden v. Chipotle Mexican Grill, Inc., 846 F.3d 1013, 1019 (8th Cir. 2017) (employer's concerns existed long before the protected activity, indicating that they were not fabricated to conceal a retaliatory animus). Consequently, Figueroa's retaliation claims under the ADA and Title VII fail.

      C.  **Figueroa's** claims against Cardinal

To the extent that Figueroa's claims against Cardinal are contingent on her claims against Axiscare, they fail in lockstep. Only her direct discrimination for failure-to-hire against Cardinal remains. The Court shall discuss the relevant facts to this claim below.

On April 9, 2013, Figueroa applied for two positions with Cardinal through the internet: one as Supervisor Operations Manager, and the other as a "QRA Management" position. See ECF No. 71-1, ¶ 14. Over 130 candidates applied for the first position, and over 170 for the second. Id. ¶ 15. Maribel Delfaus (Delfaus), Cardinal's VP Human Resources & Security, handled recruiting at Cardinal and oversaw the employment application process. Delfaus did not know about Figueroa's past employment history nor did she know that Figueroa had filed an EEOC charge against Axiscare. Id. at ¶ 18.

On April 3, 2013, Cardinal made an employment offer to a candidate for the position of Supervisor Operations Management, almost a week before Figueroa submitted her application for the position. Id. ¶ 16. The offer was accepted. Id. On the other hand, the "QRA Management" opening was closed based on business reasons, and no one was hired for the position. Id. at ¶ 17.

Figueroa alleges that Cardinal failed to hire her on account of her sex and disability. To establish a prima facie case for failure to hire, Figueroa bears the burden of showing that (1) she is a member of a protected class, (2) she was qualified for the open position for which she applied, (3) she was rejected for that position, and (4) someone holding similar qualifications received the position instead. Ingram v. Brink's, Inc., 414 F.3d at 230.

Figueroa's claim under the ADA immediately fails as to Cardinal , since she has failed to establish that she was a member of a protected class; that is, she was not disabled under the meaning of the ADA. On the other hand with respect to both her Title VII and ADA claims, she cannot establish that she was rejected for the position. Cardinal filled one of the positions before she even submitted her application, and the other opening was closed for business reasons before anyone was hired.

The Court need not press any further. The facts surrounding this claim are crystal clear and indisputably show that Cardinal did not discriminate against Figueroa for any reason at all. Her claim is **DISMISSED.**

D. **Torres'** claims against Axiscare

Torres claims that Axiscare terminated his employment in retaliation for his refusal to provide a sworn statement alleging that Figueroa lied in her EEOC charge, and that Figueroa's treatment of the employees under her supervision was not cordial. The record simply lends no support to his claim.[26]

The Court recalls that, to establish retaliation under either the ADA or Title VII, Torres must show that (1) he engaged in protected conduct; (2) he experienced an adverse employment

---

[26] Although Torres brought a claim under the EPA, he alleges no facts that would support such a claim. Also, he alleges no facts that could support a Title VII or ADA claim under a hostile work environment theory. These claims are summarily dismissed.

action; and (3) there was a causal connection between the protected conduct and the adverse employment action. See <u>D.B. ex rel. Elizabeth B. v. Esposito</u>, 675 F.3d at 41 (ADA); <u>see also</u> <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 321 (1st Cir. 2014) (Title VII). He must prove these elements under the but-for causation standard. <u>Nassar</u>, 133 S. Ct. 2517 (2013). Here, Torres cannot meet the second or third prongs of this test.

Although Figueroa claims that he was terminated in retaliation for his refusal to provide the statement, the record shows otherwise. In particular, Torres applied for a job with Cardinal, and Cardinal made him a job offer. Torres and sixteen (16) other employees were terminated by Axicare because they had accepted job offers with Cardinal. For the same reason, Torres cannot show that there was any discriminatory animus in the termination. His claims of retaliation under the ADA and Title VII necessarily fail.

    E.  <u>All claims under state law</u>

One last task remains. As mentioned above, both plaintiffs bring several claims grounded on Puerto Rico law. The defendants request the dismissal of these claims as well.

However, when the "anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice." <u>Ramos–Echevarría v. Pichis, Inc.</u>, 659 F.3d 182, 191 (1st Cir. 2011). This is not a "mandatory rule to be applied inflexibly in all cases," <u>Redondo Const. Corp. v. Izquierdo</u>, 662 F.3d 42, 49 (1st Cir. 2011), but is rather subject to the Court's discretion. This determination implicates a weighing of several factors, to wit: comity, judicial economy, convenience, and fairness. <u>Id.</u> Because defendants do not discuss these factors, the Court shall decline to exercise supplemental jurisdiction over the unaddressed state court claims.

Civil No. 13-1718 (DRD)                                                                    **Page 45**
Civil No. 13-1755 (DRD)

    F.   Axiscare's counterclaim

On March 17, 2015, Axiscare filed a counterclaim against plaintiff Figueroa. <u>See</u> ECF
No. 55. Plaintiff answered the complaint on April 7, 2015. <u>See</u> ECF No. 56. Contrary to other
claims, Axiscare's counterclaim was not subject to discovery or a dispositive motion.
Consistent with the procedural background of Axiscare's claim, the Court **DISMISSES**
**without prejudice** Axiscare's counterclaim against Figueroa.

    **IV.**    **Conclusion**

The following claims are **DISMISSED with prejudice**: 1) Figueroa's Title VII and
ADA claims under all theories presented; 2) Figueroa's claims of discrimination under Puerto
Rico laws 100 and 69; 3) Figueroa's claims of retaliation under Puerto Rico laws 100 and 44;
4) Figueroa's claims against Cardinal for direct discrimination for failure-to-hire; 5) Figueroa's
claims against Cardinal under Laws 80 and 115; 6) Torres' claims of retaliation under Title VII
and the ADA; 7) Torres' claims under Puerto Rico laws 100, 44, and 69. Further, the Court
declines to exercise supplemental jurisdiction over the remaining claims against Axiscare under
Puerto Rico law 115 as to Figueroa and law 80 as to Figueroa and Torres and so these claims
are **DISMISSED without prejudice**. Finally, the Court **DISMISSES without prejudice**
Axiscare's counterclaim against plaintiff Figueroa.

    **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of July, 2018.

                          *s/ Daniel R. Dominguez*
                          DANIEL R. DOMINGUEZ
                          U.S. Senior District Judge